IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE, *Plaintiff*, | |
| v. | Civil Action No. ELH-18-2357 |
| BP P.L.C., et al., *Defendants*. | |

**MEMORANDUM OPINION**

In this Memorandum Opinion, the Court determines whether a suit concerning climate change was properly removed from a Maryland state court to federal court.

The Mayor and City Council of Baltimore (the "City") filed suit in the Circuit Court for Baltimore City against twenty-six multinational oil and gas companies. *See* ECF 42 (Complaint). The City alleges that defendants have substantially contributed to greenhouse gas pollution, global warming, and climate change by extracting, producing, promoting, refining, distributing, and selling fossil fuel products (*i.e.*, coal, oil, and natural gas), while simultaneously deceiving consumers and the public about the dangers associated with those products. *Id.* ¶¶ 1–8. As a result of such conduct, the City claims that it has sustained and will sustain "climate change-related injuries." *Id.* ¶ 102. According to the City, the injuries from "[a]nthropogenic (human-caused) greenhouse gas pollution," *id.* ¶ 3, include a rise in sea level along Maryland's coast, as well as an increase in storms, floods, heatwaves, drought, extreme precipitation, and other conditions. *Id.* ¶ 8.

The Complaint asserts eight causes of action, all founded on Maryland law: public nuisance (Count I); private nuisance (Count II); strict liability for failure to warn (Count III); strict liability

for design defect (Count IV); negligent design defect (Count V); negligent failure to warn (Count VI); trespass (Count VII); and violations of the Maryland Consumer Protection Act, Md. Code (2013 Repl. Vol., 2019 Supp.), Com. Law §§ 13–101 to 13–501 (Count VIII). *Id.* ¶¶ 218–98. The City seeks monetary damages, civil penalties, and equitable relief. *Id.*

Two of the defendants, Chevron Corp. and Chevron U.S.A., Inc. (collectively, "Chevron"), timely removed the case to this Court. ECF 1 (Notice of Removal).[1] Asserting a battery of grounds for removal, Chevron underscores that the case concerns "*global* emissions" (*id.* at 3) with "uniquely federal interests" (*id.* at 6) that implicate "bedrock federal-state divisions of responsibility[.]" *Id.* at 3.

The eight grounds for removal are as follows: (1) the case is removable under 28 U.S.C. § 1441(a) and § 1331, because the City's claims are governed by federal common law, not state common law; (2) the action raises disputed and substantial issues of federal law that must be adjudicated in a federal forum; (3) the City's claims are completely preempted by the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*, and/or other federal statutes and the Constitution; (4) this Court has original jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b); (5) removal is authorized under the federal officer removal statute, 28 U.S.C. § 1442(a)(1); (6) this Court has federal question jurisdiction under 28 U.S.C. § 1331 because the City's claims are based on alleged injuries to and/or conduct on federal enclaves; (7) removal is authorized under 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b), because the City's claims are

---

[1] Chevron alleged that no other defendants had been served prior to the removal. ECF 28 (Chevron's Statement in Response to Standing Order Concerning Removal). The Notice of Removal was timely. *See* 28 U.S.C. § 1446(b) (defendant must remove within thirty days after service). And, because the action was not removed "solely under section 1441(a)," the consent of the other defendants was not required. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.").

related to federal bankruptcy cases; and (8) the City's claims fall within the Court's original admiralty jurisdiction under 28 U.S.C. § 1333.  ECF 1 at 6–12, ¶¶ 5–12.

Thereafter, the City filed a motion to remand the case to state court, pursuant to 28 U.S.C. § 1447(c).  ECF 111.  The motion is supported by a memorandum of law (ECF 111-1) (collectively, "Remand Motion").  Defendants filed a joint opposition to the Remand Motion (ECF 124, "Opposition"), along with three supplements containing numerous exhibits.  ECF 125; ECF 126; ECF 127.[2]  The City replied.  ECF 133.

Defendants also filed a conditional motion to stay the execution of any remand order.  ECF 161.  They ask that, in the event the Court grants the City's Remand Motion, the Court issue an order staying execution of the remand for thirty days to allow them to appeal the ruling.  *Id*. at 1–2.  The City initially opposed that motion (ECF 162), but subsequently stipulated to the requested stay.  ECF 170.  This Court accepted the parties' stipulation by Consent Order of April 22, 2019.  ECF 171.

No hearing is necessary to resolve the Remand Motion.  *See* Local Rule 105.6.  For the reasons that follow, I conclude that removal was improper.  Therefore, I shall grant the Remand Motion.  However, I shall stay execution of the remand for thirty days, in accordance with the parties' joint stipulation and the Court's prior Order.

---

[2] The following defendants did not join in the Opposition to the City's Remand Motion: Crown Central Petroleum Corp.; Louisiana Land & Exploration Co.; Phillips 66 Co.; Marathon Oil Co.; and Marathon Oil Corp.  *See* ECF 124; ECF 42.  However, it appears that three of these defendants were not properly named in the Complaint.  *See* ECF 14 (Local Rule 103.3 Disclosure Statement by Louisiana Land and Exploration Co. LLC, stating that defendant Louisiana Land & Exploration Co. no longer exists); ECF 40 (Local Rule 103.3 Disclosure Statement by Crown Central LLC and Crown Central New Holdings LLC, stating that defendant Crown Central Petroleum Corp. no longer exists); ECF 108 (Local Rule 103.3 Disclosure Statement by Phillips 66 does not identify Phillips 66 Co.).

# I.       Discussion

## A.       The Contours of Removal

This matter presents a primer on removal jurisdiction; defendants rely on the proverbial "laundry list" of grounds for removal. I begin by outlining the general contours of removal jurisdiction and then turn to the specific bases for removal on which defendants rely.

District courts of the United States are courts of limited jurisdiction and possess only the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citation omitted); *see Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 727, 432 (4th Cir. 2014). They "may not exercise jurisdiction absent a statutory basis . . . ." *Exxon Mobil Corp*, 545 U.S. at 552. Indeed, a federal court must presume that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper. *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).

Under § 28 U.S.C. § 1441, the general removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* § 1441(a). Congress has conferred jurisdiction on the federal courts in several ways. Of relevance here, to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States. *See* U.S. Const. art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . .");

*see also* 28 U.S.C. § 1331; *Exxon Mobil Corp.*, 545 U.S. at 552.  This is sometimes called federal question jurisdiction.[3]

The burden of demonstrating jurisdiction and the propriety of removal rests with the removing party.  *See McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Robb Evans & Assocs. v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc).  Therefore, "[i]f a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter."  *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008).  And, if "a case was not properly removed, because it was not within the original jurisdiction" of the federal court, then "the district court must remand [the case] to the state court from which it was removed."  *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 (1983) (citing 28 U.S.C. § 1447(c)).

Courts are required to construe removal statutes narrowly.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).  This is because "the removal of cases from state to federal

---

[3] In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000.  *Exxon Mobil Corp.*, 545 U.S. at 552; *see* 28 U.S.C. § 1332.  Diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant."  *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  Under 28 U.S.C. § 1367(a), district courts are also granted "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Although defendants do not argue otherwise, the Court observes that removal of this case was not based on diversity jurisdiction.  Presumably, this is because BP Products North America Inc. is domiciled in Maryland.  ECF 42, ¶ 20(e); *see* 28 U.S.C. § 1332; 28 U.S.C. § 1441(b).

court raises significant federalism concerns." *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc), *abrogated in part on other grounds by* the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction.") (citing *Shamrock*, 313 U.S. at 108–09). Thus, "any doubts" about removal must be "resolved in favor of state court jurisdiction." *Barbour*, 640 F.3d at 617; *see also Cohn v. Charles*, 857 F. Supp. 2d 544, 547 (D. Md. 2012) ("Doubts about the propriety of removal are to be resolved in favor of remanding the case to state court.").

Defendants assert a host of grounds for removal; four of their eight grounds are premised on federal question jurisdiction under 28 U.S.C. § 1331. These grounds are as follows: (1) the City's public nuisance claim is necessarily governed by federal common law; (2) the City's claims raise disputed and substantial issues of federal law; (3) the City's claims are completely preempted by the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and the foreign affairs doctrine; and (4) the City's claims are based on conduct or injuries that occurred on federal enclaves. ECF 1, ¶¶ 5–7; ECF 124 at 8–49. I shall address each of these arguments in turn and then consider defendants' alternative bases for removal.

As alternative grounds, defendants assert that this Court has original jurisdiction under the OCSLA, 43 U.S.C. § 1349(b); removal is authorized under the federal officer removal statute, 28 U.S.C. § 1442(a)(1); removal is authorized under 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b) because the City's claims are related to bankruptcy cases; and the City's claims fall within the Court's original admiralty jurisdiction under 28 U.S.C. § 1333.

## B.     Federal Question Jurisdiction

Article III of the United States Constitution provides: "The judicial Power shall extend to all Cases, in Law and Equity, arising under . . . the Laws of the United States."  U.S. Const. art. III, § 2, cl. 1.  Section 1331 of 28 U.S.C. grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  "Article III 'arising under' jurisdiction is broader than federal question jurisdiction under [28 U.S.C. § 1331]." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 495 (1983).  Although Congress has the power to prescribe the jurisdiction of federal courts under U.S. Const. art. I, § 8, cl. 9, it "may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution." *Verlinden*, 461 U.S. at 491.

The "propriety" of removal on the basis of federal question jurisdiction "depends on whether the claims 'aris[e] under' federal law." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 441 (4th Cir. 2005) (citation omitted).   And, when jurisdiction is based on a claim "arising under the Constitution, treaties or laws of the United States," the case is "removable without regard to the citizenship or residence of the parties."  28 U.S.C. § 1441(b).

A case "'aris[es] under' federal law in two ways."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).  First, and most commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257; *see also Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) (stating that a "suit arises under the law that creates the cause of action").  Second, a claim is deemed to arise under federal law for purposes of § 1331 when, although it finds its origins in state law, "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."

*Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 690 (2006); *see Franchise Tax Bd.*, 463 U.S. at 13.

This latter set of circumstances arises only in a "'special and small category' of cases." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice*, 547 U.S. at 699). Specifically, jurisdiction exists under this category only when "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988); *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 181 (4th Cir. 2014).

The "presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citation omitted); *see Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016). This "makes the plaintiff the master of [its] claim," because in drafting the complaint, the plaintiff may "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Pinney*, 402 F.3d at 442.

However, even when a well-pleaded complaint sets forth a state law claim, there are instances when federal law "is a necessary element" of the claim. *Christianson*, 486 U.S. at 808. Under certain circumstances, such a case may be removed to federal court. The *Pinney* Court explained, 402 F.3d at 442 (internal citation omitted):

> Under the substantial federal question doctrine, 'a defendant seeking to remove a case in which state law creates the plaintiff's cause of action must establish two elements: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial.' If the defendant

fails to establish either of these elements, the claim does not arise under federal law pursuant to the substantial federal question doctrine, and removal cannot be justified under this doctrine.

(internal citations omitted).

A case may also be removed from state court to federal court based on the doctrine of complete preemption. The complete preemption doctrine is a "corollary of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *see In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006). The Supreme Court has explained: "When [a] federal statute *completely* pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial*, 539 U.S. at 8 (emphasis added). Therefore, federal question jurisdiction is satisfied "when a federal statute wholly displaces the state-law cause of action through *complete* pre-emption." *Id.* (emphasis added); *see also Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004).

Complete preemption is a jurisdictional doctrine that "'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins.*, 481 U.S. at 65); *see Pinney*, 402 F.3d at 449. But, to remove an action on the basis of complete preemption, a defendant must show that Congress intended for federal law to provide the "exclusive cause of action" for the claim asserted. *Beneficial*, 539 U.S. at 9; *see also Barbour*, 640 F.3d at 631.

Moreover, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, *including the defense of pre-emption,* even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393 (emphasis added); *see Vaden*, 556 U.S. at 60.

Therefore, in examining the well pleaded allegations in the complaint for purposes of removal, the court must "ignore potential defenses." *Beneficial*, 539 U.S. at 6. Put another way, when preemption is a defense, it "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins.*, 481 U.S. at 63; *see Pinney*, 402 F.3d at 449.

Defendants seem to conflate complete preemption with the defense of ordinary preemption. *See Caterpillar Inc.*, 482 U.S. at 392. The "existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and 'a defendant [generally] may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law.'" *Davila*, 542 U.S. at 207 (internal citations omitted).

"Federal law may preempt state law under the Supremacy Clause in three ways—by 'express preemption,' by 'field preemption,' or by 'conflict preemption.'" *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007) (citation omitted); *see also Decohen v. Capital One, N.A.*, 703 F.3d 216, 223 (4th Cir. 2012). These three types of preemption, however, are forms of "ordinary preemption" that serve only as federal defenses to a state law claim. *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005); *see Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014). As one federal court recently explained: "The doctrine of complete preemption should not be confused with ordinary preemption, which occurs when there is the defense of 'express preemption,' 'conflict preemption,' or 'field preemption' to state law claims." *Meade v. Avant of Colorado, LLC*, 307 F. Supp. 3d 1134, 1140 (D. Colo. 2018). Unlike the doctrine of complete preemption, these forms of preemption do not appear on the face of a well-pleaded complaint and therefore they do not support removal. *Lontz*, 413 F.3d at 440; *Wurtz*, 761 F.3d at 238.

Ordinary preemption "regulates the interplay between federal and state laws when they conflict or appear to conflict . . . ." *Decohen*, 703 F.3d at 222. "[S]tate law is naturally preempted to the extent of any conflict with a federal statute," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), because the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, provides that a federal enactment is superior to a state law. As a result, pursuant to the Supremacy Clause, "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted); *see also Merck Sharp & Dohme Corp. v. Albrecht*, ___ U.S. ___, 2019 WL 2166393, at *8 (May 20, 2019) (discussing impossibility or conflict preemption, and reiterating that "'state laws that conflict with federal law are without effect,'" but noting that the "'possibility of impossibility [is] not enough'") (citations omitted); *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 480 (2013). In *Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014), the Fourth Circuit stated: "The Supreme Court has held that state and federal law conflict when it is impossible for a private party to simultaneously comply with both state and federal requirements.[] In such circumstances, the state law is preempted and without effect." *Id.* at 475.[4]

"Federal preemption of state law under the Supremacy Clause – including state causes of action – is 'fundamentally . . . a question of congressional intent.'" *Cox v. Duke Energy, Inc.*, 876 F.3d 625, 635 (4th Cir. 2017) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)); *see also Beneficial*, 539 U.S. at 9. Congress manifests its intent in three ways: (1) when Congress explicitly defines the extent to which its enactment preempts state law (express preemption); (2) when state

---

[4] In his concurrence in *Albrecht*, Justice Thomas observed that a defense based on conflict preemption fails as a matter of law in the absence of a statute, regulations, or other agency action "with the force of law that would have prohibited [the defendant] from complying with its alleged state-law duties. . . ." 2019 WL 2166393, at *12.

law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively" (field preemption); and (3) when state law "actually conflicts with federal law" (conflict or impossibility preemption). *English*, 496 U.S. at 78–79.

### 1.      Federal Common Law

Defendants first argue that federal question jurisdiction exists because the City's public nuisance claim implicates "uniquely federal interests" and thus "is governed by federal common law." ECF 124 at 9–11. According to defendants, the federal government has a unique interest both in promoting fossil fuel production and in crafting multilateral agreements with foreign nations to address global warming. *Id*. at 16. Therefore, they insist that federal common law supports removal. *Id*.

The City counters that this argument is no more than an ordinary preemption defense. ECF 111-1 at 9. In effect, argues the City, defendants contend that federal common law applies to any cause of action "touching on climate change, such that state law claims under any theory have been obliterated . . . ." ECF 111-1 at 8. In the City's view, federal common law does not provide a proper basis for removal. *Id*. I agree.

It is true that federal question jurisdiction exists over claims "founded upon" federal common law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972) (stating that 28 U.S.C. § 1331 "will support claims founded upon federal common law as well as those of a statutory origin"). It is also true, however, that the presence of federal question jurisdiction is governed by the well-pleaded complaint rule. *Rivet*, 522 U.S. at 475. The well-pleaded complaint rule is plainly not satisfied here because the City does not plead any claims under federal law. *See* ECF 42.

Defendants' assertion that the City's public nuisance claim under Maryland law is in fact "governed by federal common law" is a cleverly veiled preemption argument. *See Boyle v. United*

*Tech. Corp*., 487 U.S. 500, 504 (1988) (finding that a state law claim against a federal government contractor that involved "uniquely federal interests" was governed exclusively by federal common law and, thus, state law was preempted); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987) (stating that if a case "should be resolved by reference to federal common law … state common law [is] preempted"); *see also Merkel v. Fed. Exp. Corp*., 886 F. Supp. 561, 564–65 (N.D. Miss. 1995) (stating that if "plaintiff's claims are governed by federal common law," as defendant argued to support removal, "then [defendant] is entitled to assert the defense of preemption against the plaintiff's state law claims"). Unfortunately for defendants, ordinary preemption does not allow the Court to treat the City's public nuisance claim as if it had been pleaded under federal law for jurisdictional purposes. *See Franchise Tax Bd*., 463 U.S. at 14.

As indicated, unlike ordinary preemption, complete preemption *does* "'convert[] an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins.*, 481 U.S. at 65); *see Lontz*, 413 F.3d at 439 (noting that the complete preemption doctrine is the only "exception" to the well-pleaded complaint rule); *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 311–12 (3d Cir. 1994) ("[T]he only state claims that are 'really' federal claims and thus removable to federal court are those that are preempted completely by federal law.") (citations omitted); *see also Hannibal v. Fed. Exp. Corp*., 266 F. Supp. 2d 466, 469 (E.D. Va. 2003) (observing that, where the defendant argued that removal was proper because the plaintiff's contract claim was governed exclusively by federal common law, "the Defendant is attempting to argue that federal common law completely preempts the Plaintiff's state breach of contract claim"). But, defendants do not argue that the City's public nuisance claim is completely preempted by federal common law. Rather, they contend only that the City's claims are

completely preempted by the Clean Air Act and the foreign affairs doctrine.  *See* ECF 124 at 43–48.

As I see it, defendants' assertion that federal common law supports removal is without merit, even if construed as a complete preemption argument.

Two district judges in the Northern District of California considered the matter of removal in cases similar to the one sub judice.  They reached opposing conclusions as to removal.

In *County of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), plaintiffs lodged tort claims against fossil fuel producers for injuries stemming from climate change.  *Id.* at 937.  Judge Chhabria expressly determined that "federal common law does not govern plaintiffs' claims" and thus the cases "should not have been removed to federal court on the basis of federal common law . . . ." *Id.*  He considered almost every ground for removal that has been asserted here, and rejected each one.  He concluded that removal was not warranted under the doctrine of complete preemption, *id.*, or on the basis of *Grable* jurisdiction, *id.* at 938, or under the Outer Continental Shelf Lands Act, *id.*, or because two of the defendants had earlier bankruptcy proceedings.  *Id.* at 939.  An appeal is pending.  *See County of Marin v. Chevron Corp.*, Appeal No. 18-15503 (9th Cir. Mar. 27, 2018).

Conversely, in *California v. BP P.L.C.*, Civ. No. WHA-16-6011, 2018 WL 1064293 (N.D. Cal. Feb. 27, 2018), *appeal docketed sub. nom.*, *City of Oakland v. BP, P.L.C.*, No. 18-16663 (9th Cir. Sept. 4, 2018), Judge Alsup ruled in favor of removal.  I pause to review that opinion and to elucidate my point of disagreement.

The State of California and the cities of Oakland and San Francisco asserted public nuisance claims against energy producers – many of whom are defendants in this action – for injuries stemming from climate change.  *Id.* at *1.  The plaintiffs alleged that the defendants

produced and sold fossil fuels while simultaneously deceiving the public regarding the dangers of global warming and the benefits of fossil fuels. *Id*. at *1, 4. After the defendants removed the action to federal court, the plaintiffs moved to remand. *Id*. Although the plaintiffs' public nuisance claims were pleaded under California law, the court found that federal question jurisdiction existed because the claims were "necessarily governed by federal common law." *Id*. at *2.

The court reasoned that "a uniform standard of decision is necessary to deal with the issues raised" in the suits, in light of the "worldwide predicament . . . ." *Id*. at *3. The court explained, *id*.: "A patchwork of fifty different answers to the same fundamental global issue would be unworkable." Further, the court observed that the plaintiffs' claims "depend on a global complex of geophysical cause and effect involving all nations of the planets," and that "the transboundary problem of global warming raises exactly the sort of federal interests that necessitate a uniform solution." *Id*. at *3, 5. Accordingly, the court denied the plaintiffs' motion to remand. *Id*. at *5.

The court's reasoning was well stated and presents an appealing logic. Nevertheless, the court did not find that the plaintiffs' state law claims fell within either of the carefully delineated exceptions to the well-pleaded complaint rule – *i.e.*, that they were completely preempted by federal law or necessarily raised substantial, disputed issues of federal law. *See Gunn*, 568 U.S. at 257–58; *Caterpillar Inc.*, 482 U.S. at 393. Instead, the court looked beyond the face of the plaintiffs' well-pleaded complaint and authorized removal because it found that the plaintiffs' public nuisance claims were "governed by federal common law." *BP*, 2018 WL 1064293, at *5. But, the ruling is at odds with the firmly established principle that ordinary preemption does not give rise to federal question jurisdiction. *See Caterpillar Inc.*, 482 U.S. at 393; *Marcus v. AT & T Corp.*, 138 F.3d 46, 53–54 (2d Cir. 1998) (rejecting the defendants' argument that federal common law provided a basis for removal of plaintiff's state law claims where federal common

law did not completely preempt plaintiff's claims); *Hannibal*, 266 F. Supp. 2d at 469 (holding that federal common law did not support removal where it did not completely preempt the plaintiff's state law claim).

Indeed, the ruling has been harshly criticized by at least one law professor. *See* Gil Seinfeld, *Climate Change Litigation in the Federal Courts: Jurisdictional Lessons from California v. BP*, 117 Mich. L. Rev. Online 25, 32–35 (2018) (asserting that the decision "disregards" and "transgresses the venerable rule that the plaintiff is the master of her complaint," including whether "to eschew federal claims in favor of ones grounded in state law alone"; stating that the case is "best understood as a complete preemption case" because that is the "only doctrine that is … capable of justifying the holding"; observing that the district court's application of the preemption doctrine was "unorthodox," as congressional intent was "out of the picture"; and stating that the ruling "is out of step with prevailing doctrine").

Defendants also rely on *City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018), *appeal docketed*, No. 18-2188 (2d Cir. July 26, 2018), to support their argument that federal common law provides an independent basis for removal. There, the plaintiffs brought claims for nuisance and trespass under state law against oil companies for producing and selling fossil fuel products that contributed to global warming. *Id*. at 468. In their motion to dismiss the complaint, the defendants argued that the plaintiffs' claims were governed by federal common law rather than state law. *Id*. at 470. After concluding that the plaintiffs' claims were "ultimately based on the 'transboundary' emission of greenhouse gases," the court agreed. *Id*. at 472 (citing *BP*, 2018 WL 1064293, at *3). Significantly, however, the court did not consider whether this finding conferred federal question jurisdiction because the plaintiffs originally filed their complaint in federal court

based on diversity jurisdiction.  *See id*.  Accordingly, this case is of no help to defendants here, at the threshold jurisdictional stage.

In sum, defendants have framed their argument to allege that federal common law governs the City's public nuisance claim.  In actuality, however, they present a veiled complete preemption argument.  As noted, complete preemption occurs only when Congress intended for federal law to provide the "exclusive cause of action" for the claim asserted.  *Beneficial*, 539 U.S. at 9; *see also Barbour,* 640 F.3d at 631.  Defendants have not shown that any federal common law claim for public nuisance is available to the City here, and case law suggests that any such federal common law claim has been displaced by the Clean Air Act.  *See Am. Elec. Power Co. v. Connecticut* ("*AEP*"), 564 U.S. 410, 424 (2011) (holding that the CAA displaced plaintiffs' federal common law claim for public nuisance against power plants seeking abatement of their carbon dioxide emissions); *Native Village of Kivalina v. Exxonmobil Corp*., 696 F.3d 849, 857–58 (9th Cir. 2012) (holding that the CAA displaced the plaintiffs' federal common law claim for public nuisance seeking damages for past greenhouse gas emissions).

It may be true that the City's public nuisance claim is not viable under Maryland law.  But, this Court need not – and, indeed, cannot – make that determination.  The well-pleaded complaint rule confines the Court's inquiry to the face of the Complaint and demands the conclusion that no federal question jurisdiction exists over the City's public nuisance claim, which is founded on Maryland law.  *See Caterpillar Inc.*, 482 U.S. at 392.  Authorizing removal on the basis of a preemption defense hijacks this rule and, in turn, enhances federal judicial power at the expense of plaintiffs and state courts.  In the absence of any controlling authority, I decline to endorse such an extension of removal jurisdiction.

## 2.    Disputed, Substantial Federal Interests

Defendants next assert that, even if removal is not appropriate on the basis of federal common law, removal is nonetheless proper because the City's claims raise substantial and disputed federal issues.  ECF 124 at 27.

As noted, there is a "slim category" of cases in which federal question jurisdiction exists even though the claim "finds its origins in state rather than federal law."  *Gunn*, 568 U.S. at 258.  A state law claim falls within this category of jurisdiction, often referred to as *Grable* jurisdiction because of the Supreme Court's seminal opinion on the topic in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308 (2005), only when four requirements are satisfied.  "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id*.; *see Grable*, 545 U.S. at 313–14.  The Supreme Court has emphasized that courts are to be cautious in exercising jurisdiction of this type because it lies at "the outer reaches of § 1331."  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

Defendants contend that *Grable* jurisdiction exists because the City's claims raise a host of federal issues.  ECF 124 at 28–39.  For example, they assert that the City's claims "intrude upon both foreign policy and carefully balanced regulatory considerations at the national level, including the foreign affairs doctrine."  ECF 1 at 21–22, ¶ 34.  Further, they assert that the City's claims "have a significant impact on foreign affairs," "require federal-law-based cost-benefit analyses," "amount to a collateral attack on federal regulatory oversight of energy and the environment," "implicate federal issues related to the navigable waters of the United States," and "implicate

federal duties to disclose." ECF 124 at 28–39. Accordingly, defendants argue that *Grable* jurisdiction supports removal. *Id.*

I begin by considering whether any of these issues are "necessarily raised" by the City's claims, as required for *Grable* jurisdiction. *See Gunn*, 568 U.S. at 258; *Grable*, 545 U.S. at 314. "A federal question is 'necessarily raised' for purposes of § 1331 only if it is a 'necessary element of one of the well-pleaded state claims.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 381 (4th Cir. 2019) (quoting *Franchise Tax Bd.*, 463 U.S. at 13). It is not enough that "federal law becomes relevant only by way of a defense to an obligation created entirely by state law." *Franchise Tax Bd.*, 463 U.S. at 13. Rather, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs, LLC*, 757 F.3d at 182 (quoting *Dixon*, 369 F.3d at 816).

Defendants first argue that the City's claims have a "significant impact" on foreign affairs. ECF 124 at 28. They assert that addressing climate change has been the subject of international negotiations for decades and that the City's claims "seek to supplant these international negotiations and Congressional and Executive branch decisions, using the ill-suited tools of Maryland law and private state-court litigation." *Id.* at 30. Thus, according to defendants, the City's claims raise substantial federal issues and removal is proper. *Id.* at 28.

Climate change is certainly a matter of serious national and international concern. But, defendants do not actually identify any foreign policy that is implicated by the City's claims, much less one that is necessarily raised. *See* ECF 124 at 31. They merely point out that climate change "*has* been the subject of international negotiations for decades," as most recently evidenced by the adoption of the Paris Agreement in 2016. *Id.* at 29, 31 (emphasis added). Putting aside the fact that President Trump has announced his intention to withdraw the United States from the Paris

Agreement, defendants' generalized references to foreign policy wholly fail to demonstrate that a federal question is "essential to resolving" the City's state law claims. *Burrell*, 918 F.3d at 383; *see also President Trump Announces U.S. Withdrawal from the Paris Climate Accord*, WhiteHouse.gov (June 1, 2017), https://www.whitehouse.gov/articles/president-trump-announces-u-s-withdrawal-paris-climate-accord/.

Defendants' next argument for *Grable* jurisdiction is slightly more specific, but nonetheless misses the mark. They assert that the City's nuisance claims require the same cost-benefit analysis of fossil fuels that federal agencies conduct and, thus, that adjudicating these claims will require a court to interpret various federal regulations. ECF 124 at 34. Further, defendants contend that, because the City's nuisance claims seek a different balancing of social harms and benefits than that struck by Congress, they "amount to a collateral attack on federal regulatory oversight of energy and the environment." *Id*. at 35.

The City's nuisance claims are based on defendants' extraction, production, promotion, and sale of fossil fuel products without warning consumers and the public of their known risks. *See* ECF 42, ¶¶ 218–36. The City does not rely on any federal statutes or regulations in asserting its nuisance claims; in fact, it nowhere even alleges that defendants violated any federal statutes or regulations. Rather, it relies exclusively on state nuisance law, which prohibits "substantial and unreasonable" interferences with the use and enjoyment of property. *Washington Suburban Sanitary Comm'n v. CAE-Link Corp.*, 330 Md. 115, 125, 622 A.2d 745, 750 (1993); *see also Burley v. City of Annapolis*, 182 Md. 307, 312, 34 A.2d 603, 605 (1943) (stating that a public nuisance is one that "has[s] a common effect and produce[s] a common damage"). Although federal laws and regulations governing energy production and air pollution may supply potential defenses, federal law is plainly not an element of the City's state law nuisance claims.

Moreover, the City does not seek to modify any regulations, laws, or treaties, or to establish national or global standards for greenhouse gas emissions. Rather, as the City observes, it seeks damages and abatement of the nuisance within Baltimore. ECF 111-1 at 32 (citing ECF 42, ¶¶ 12, 228).[5]

Nor is removal proper because the City's claims amount to a "collateral attack on the federal regulatory scheme." ECF 124 at 35. Indeed, defendants do not identify any regulation or statute that is actually attacked by the City's claims. Rather, defendants make only vague references to a "comprehensive regulatory scheme." *Id*. The mere existence of a federal regulatory regime, however, does not confer federal question jurisdiction over a state cause of action. *See Pinney*, 402 F.3d at 449 (finding that a "connection between the federal scheme regulating wireless telecommunications and the [plaintiffs'] state claims" was not enough to establish federal question jurisdiction).

In addition, defendants contend that the City's public nuisance claim "implicate[s] federal issues related to the navigable waters of the United States." ECF 124 at 37. They assert that a necessary element of the City's theory of causation is the rising sea levels and that, to assess whether defendants' conduct is the proximate cause of the sea level rise, a court will have to evaluate the adequacy of the federal infrastructure in place to protect navigable waters. *Id*. Further, defendants argue that the equitable relief sought by the City will require approval of the U.S. Army Corps of Engineers ("Army Corps") and will require a court to interpret an extensive web of regulations issued by the Army Corps governing the construction of structures on navigable waters. *Id*. at 35.

_____

[5] The City asserts in its Remand Motion that it does not seek to enjoin any party. ECF 111-1 at 32. But, in its Complaint it does seek to "enjoin" defendants from "creating future common-law nuisances." ECF 42, ¶ 228.

The argument, although creative, would lead the court into unchartered waters. The Complaint does not challenge the adequacy of any federal action taken over navigable waters, and the requested relief nowhere mentions the construction or modification of any infrastructure on navigable waters. *See* ECF 42, ¶¶ 218–28. That the City's hypothetical remedy *might* include some construction of infrastructure on navigable waters, and thus require the approval of the Army Corps, does not mean that an issue of federal law is necessarily raised by the City's claims. *See K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1032 (9th Cir. 2011) (stating that, where the plaintiff brought an action seeking ownership of an oil and gas lease, "[t]he mere fact that the Secretary of the Interior must approve oil and gas leases does not raise a federal question").

Finally, defendants assert that the City's claims "implicate" federal duties to disclose because their alleged deception of federal regulators is "central to [the City's] allegations." ECF 124 at 39. And, because federal law governs claims of fraud on federal agencies, defendants argue that the City's claims "give rise to federal questions." *Id.*

This argument rests on a mischaracterization of the City's claims. The Complaint does not allege that defendants violated any duties to disclose imposed by federal law. Rather, it alleges that defendants breached various duties under state law by, *inter alia*, failing to warn consumers, retailers, regulators, public officials, and the City of the risks posed by their fossil fuel products. *See, e.g.,* ECF 42, ¶¶ 221–22, 241, 259. These duties, imposed by state law, exist separate and apart from any duties to disclose imposed by federal law. *See, e.g.*, *Gourdine v. Crews*, 405 Md. 722, 738–54, 955 A.2d 769, 779–89 (2008) (describing duty in failure to warn cases); *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 446–48, 601 A.2d 633, 645–47 (1992). Thus, I reject defendants' attempt to inject a federal issue into the City's state law public nuisance claim where one simply does not exist.

To be sure, there are federal *interests* in addressing climate change. Defendants have failed to establish, however, that a federal *issue* is a "necessary element" of the City's state law claims. *Franchise Tax Bd.*, 463 U.S. at 13. Accordingly, even without considering the remaining requirements for *Grable* jurisdiction, I reject defendants' assertion that this action falls within the "special and small category" of cases in which federal question jurisdiction exists over a state law claim. *Empire Healthchoice*, 547 U.S. at 699.

### 3.      Complete Preemption

Defendants contend that removal is proper because the City's claims are completely preempted by both the foreign affairs doctrine and the Clean Air Act. ECF 124 at 43–44. The Court has previously addressed preemption principles. As noted, federal question jurisdiction exists "when a federal statute wholly displaces the state-law cause of action through complete pre-emption.[]" *Beneficial*, 539 U.S. at 8.

To remove an action on the basis of complete preemption, a defendant must show that Congress intended for federal law to provide the "exclusive cause of action" for the claim asserted. *Id.* at 9; *see also Barbour*, 640 F.3d at 631. The Fourth Circuit recognizes a presumption against complete preemption that may only be rebutted in the rare circumstances where "federal law 'displace[s] entirely any state cause of action.'" *Lontz*, 413 F.3d at 440 (quoting *Franchise Tax Bd.*, 463 U.S. at 23).

Complete preemption is rare. To my knowledge, the Supreme Court has, in fact, found complete preemption in regard to only three statutes. *See Beneficial*, 539 U.S. at 10–11 (National Bank Act); *Metro. Life Ins.*, 481 U.S. at 66–67 (ERISA § 502(a)); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968) (Labor Management Relations Act § 301). This is unsurprising because the doctrine represents a significant departure from the general rule

that the plaintiff is "the master" of its claim, and it "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392; *see also Lontz*, 413 F.3d at 441 (noting that complete preemption "undermines the plaintiff's traditional ability to plead under the law of his choosing").

Defendants first argue that the City's claims are completely preempted by the foreign affairs doctrine, because "litigating in state court the inherently transnational activity challenged by the Complaint would inevitably intrude on the foreign affairs power of the federal government." ECF 124 at 44. I disagree.

The federal government has the exclusive authority to act on matters of foreign policy. *Crosby*, 530 U.S. at 380; *United States v. Pink*, 315 U.S. 203, 233 (1942). Accordingly, state laws that conflict with the federal government's foreign policy are preempted. In *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003), the Court said: "There is, of course, no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy, given the 'concern for uniformity in this country's dealings with foreign nations' that animated the Constitution's allocation of the foreign relations power to the National Government in the first place." *Id.* at 413 (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427, n.25 (1964)); *see Crosby*, 530 U.S. at 380; *Gingery v. City of Glendale*, 831 F.3d 1222, 1228 (9th Cir. 2016).

But, defendants' reliance on this principle, often referred to as the "foreign affairs doctrine," *Gingery*, 831 F.3d at 1228, is inapposite in the complete preemption context. As indicated, complete preemption occurs only when Congress intended for federal law to provide the "exclusive cause of action" for the claim asserted. *Beneficial*, 539 U.S. at 9; *see also Barbour*, 640 F.3d at 631. That does not exist here. That is, there is no congressional intent regarding the

preemptive force of the judicially-crafted foreign affairs doctrine, and the doctrine obviously does not supply any substitute causes of action. Therefore, I am not convinced by defendants' argument that the City's claims are completely preempted by the foreign affairs doctrine.

Defendants also assert that the City's claims are completely preempted by the Clean Air Act. ECF 124 at 44–48. They contend that the Clean Air Act provides the exclusive cause of action for regulating nationwide emissions and that permitting the City's state law claims against out-of-state sources would pose an obstacle to the objectives of Congress. *Id.*

The CAA was enacted in 1963. Clean Air Act, Pub. L. No. 88–206, 77 Stat. 392–401 (1963). Among other purposes, the CAA aims "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population[.]" 42 U.S.C. § 7401(b)(1). It is an expansive statute separated into six Titles. It addresses pollution from stationary sources (Title I, 42 U.S.C. §§ 7401–7431, 7470–7479, 7491–7492, 7501–7515); pollution from moving sources (Title II, 42 U.S.C. §§ 7521–7554, 7571–7574, 7581–7590); noise pollution and acid rain control (Title IV, 42 U.S.C. §§ 7641–7642 and 7651–7651o); and stratospheric ozone protection (Title VI, 42 U.S.C. §§ 7671–7671q). Title III contains general provisions, including definitions, citizen suits, and other administrative matters, and Title V governs permits.

It is true, as defendants point out, that the Clean Air Act provides for private enforcement. Specifically, it creates a federal private right of action "against any person ... who is alleged to have violated ... or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 42 U.S.C. § 7604(a)(1). The CAA also creates a federal private right of action against the

Environmental Protection Agency "where there is alleged a failure … to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2).

Fatal to defendants' argument, however, is the absence of any indication that Congress intended for these causes of action in the CAA to be the exclusive remedy for injuries stemming from air pollution. *See Beneficial*, 539 U.S. at 9 (stating that complete preemption occurs "[o]nly if Congress intended [the statute] to provide the exclusive cause of action"). To the contrary, the CAA contains a savings clause that specifically preserves other causes of action. That provision states, in relevant part, 42 U.S.C. § 7604(e):

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from--
>> (1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or
>> (2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality,
> against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution.

The CAA also includes the following provision regarding state regulation of hazardous air pollutants, 42 U.S.C. § 7412(r)(11):

> Nothing in this subsection shall preclude, deny or limit any right of a State or political subdivision thereof to adopt or enforce any regulation, requirement, limitation or standard (including any procedural requirement) that is more stringent than a regulation, requirement, limitation or standard in effect under this subsection or that applies to a substance not subject to this subsection.

The language of these provisions unequivocally demonstrates that "Congress did not intend the federal causes of action under [the Clean Air Act] 'to be exclusive.'" *County of San Mateo*, 294 F. Supp. 3d at 938 (quoting *Beneficial*, 539 U.S. at 9 n.5); *see also Her Majesty the Queen in*

*Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 342–43 (6th Cir. 1989) (holding that the plaintiffs' claims for violation of state air pollution standards were not completely preempted by the CAA because the CAA's savings clause "clearly indicates that Congress did not wish to abolish state control"). Accordingly, I conclude that the CAA does not completely preempt the City's claims.

In sum, I disagree with defendants' contention that removal is proper on the grounds that the City's state law claims are completely preempted by the foreign affairs doctrine and the CAA. However, this Memorandum Opinion does not foreclose the defense of preemption in state court. *See In re Blackwater Sec. Consulting, LLC*, 460 F.3d at 590 (holding that "the district court's finding that complete preemption did not create federal removal jurisdiction will have no preclusive effect on a subsequent state-court defense of federal preemption").

### 4. Federal Enclaves

Defendants offer one final theory for federal question jurisdiction. That is, they contend that the City's claims arise under federal law because they are based on events that occurred on military bases and other federal enclaves. ECF 124 at 53.

The parameters of this contention are unclear, and defendants eschew mention of any controlling authority. Indeed, defendants only support their argument with a few cases from various district courts, most of which are unpublished. The Court's research reveals, however, that this theory of federal question jurisdiction arises from Article I, Section 8, Clause 17 of the United States Constitution. *See, e.g., Willis v. Craig*, 555 F.2d 724, 726 (9th Cir. 1977); *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952). In relevant part, that section provides:

> Congress shall have Power … to exercise exclusive legislation in all cases whatsoever, over the [District of Columbia], and to exercise like authority over all places purchased by the consent of the legislature of the state in which the [place is

located], for the erection of forts, magazines, arsenals, dockyards, and other needful buildings.

U.S. Const. art. I, § 8, cl. 17.

This provision grants the federal government exclusive legislative jurisdiction over lands obtained pursuant to this clause, or "enclaves." In *Surplus Trading Co. v. Cook*, 281 U.S. 647 (1930), the Court said: "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Id.* at 652; *see Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998).

Courts have held that federal question jurisdiction exists over claims that arise on federal enclaves. *See Stokes v. Adair*, 265 F.2d 662, 666 (4th Cir. 1959); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'") (citations omitted); *Akin*, 156 F.3d at 1034 ("Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."); *Willis*, 555 F.2d at 726; *Mater*, 200 F.2d at 124; *Hall v. Coca-Cola Co.*, Civ. No. MSD-18-0244, 2018 WL 4928976, at *2–3 (E.D. Va. Oct. 11, 2018); *Federico v. Lincoln Military Hous.*, 901 F. Supp. 2d 654, 664 (E.D. Va. 2012). The general reasoning of these courts is that any claim that arises on a federal enclave is necessarily a creature of federal law because, quite simply, there is no other law. *See Mater*, 200 F.2d at 124 ("[A]ny law existing in territory over which the United States has exclusive sovereignty must derive its authority and force from the United States and is for that reason federal law."); *Hall*, 2018 WL 4928976, at *2.

Defendants argue that federal question jurisdiction exists because "[s]ome" of them maintain production operations and sell fossil fuels on military bases and other federal enclaves. ECF 124 at 53. Specifically, they assert: "Standard Oil Co. (Chevron's predecessor) operated Elk Hills Naval Petroleum Reserve, a federal enclave, for most of the twentieth century." *Id*. In addition, they allege that defendant CITGO distributed gasoline and diesel under contracts with the Navy to multiple Naval installations. *Id*. at 54. Finally, defendants contend that federal enclave jurisdiction exists because the City alleges tortious conduct, such as lobbying activities, that occurred in the District of Columbia. *Id*.

At the outset, I reject defendants' argument that removal is proper because some of the allegedly tortious conduct occurred in the District of Columbia. Congress established a code and a local court system for the District of Columbia and, in doing so, "divested the federal courts of jurisdiction over local matters." *Andrade v. Jackson*, 401 A.2d 990, 992 (D.C. 1979) (observing that, in establishing a unified local court system under the Court Reform Act of 1973, "Congress divested the federal courts of jurisdiction over local matters, restricting those courts to those matters generally viewed as federal business"); D.C. Code § 11-501 (2012) (civil jurisdiction of the United States District Court for the District of Columbia); D.C. Code § 11-921 (2012) (civil jurisdiction of the Superior Court for the District of Columbia). *See also Palmore v. United States*, 411 U.S. 389, 408–09 (1973) (explaining that Congress established the local court system for the District of Columbia so that Article III courts can be "devoted to matters of national concern"); *McEachin v. United States*, 432 A.2d 1212, 1215 (D.C. 1981). That a claim is based on conduct that occurred in the District of Columbia, therefore, does not *ipso facto* make it a federal claim over which federal question jurisdiction lies. Rather, it must arise under federal law – as distinct

from the local law of the District of Columbia or that of another state – to fall within the scope of federal question jurisdiction.

Defendants' contention that federal question jurisdiction exists because CITGO and Chevron's predecessor, Standard Oil, conducted fossil fuel operations on federal enclaves is also without merit. As the dearth of case law illustrates, courts have only relied on this "federal enclave" theory to exercise federal question jurisdiction in limited circumstances. Specifically, courts have only found that claims arise on federal enclaves, and thus fall within federal question jurisdiction, when all or most of the pertinent events occurred there. *See, e.g.*, *Stokes*, 265 F.2d at 665–66 (finding jurisdiction existed over a personal injury suit where the injury occurred at a U.S. Army post); *Mater*, 200 F.2d at 124 (holding that the district court had jurisdiction over plaintiff's claim for personal injuries sustained on a military base); *Norair Eng'g Corp. v. URS Fed. Servs., Inc.*, Civ. No. RDB-16-1440, 2016 WL 7228861, at *3 (D. Md. Dec. 14, 2016) (finding removal proper where plaintiff's cause of action arose out of work performed exclusively on a federal enclave); *see also In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) (stating that federal jurisdiction exists in federal enclave cases "when the locus in which the claim arose is the federal enclave itself"); *Totah v. Bies*, Civ. No. CW-10-05956, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011) (upholding removal where the "substance and consummation of the tort" occurred on a federal enclave).

Those circumstances do not exist here. The City seeks relief for conduct that occurred globally over a fifty-year period – that is, defendants' contribution to global warming through their extraction, production, and sale of fossil fuel products. ECF 42, ¶¶ 5–7, 18, 20, 191. The Complaint does not contain any allegations concerning defendants' conduct on federal enclaves and, in fact, it expressly defines the scope of injury to exclude any federal territory. *Id*. ¶¶ 1 n.2,

195–217.  Accordingly, it cannot be said that federal enclaves were the "locus" in which the City's claims arose merely because one of the twenty-six defendants, and the predecessor of another defendant, conducted some operations on federal enclaves for some unspecified period of time. *See County of San Mateo*, 294 F. Supp. 3d at 939 (finding no federal enclave jurisdiction over plaintiffs' claim against oil companies for injuries stemming from climate change "since federal land was not the 'locus in which the claim arose'") (quoting *In re High-Tech*, 856 F. Supp. 2d at 1125); *see also Washington v. Monsanto Co*., 274 F. Supp. 3d 1125, 1132 (W.D. Wash. 2017) (stating that, "because [plaintiff] avowedly does not seek relief for contamination of federal territories, none of its claims arise on federal enclaves"); *Bd. of Comm'rs of the Se. La. Flood Prot. Auth. v. Tenn. Gas Pipeline Co*., 29 F. Supp. 3d 808, 831 (E.D. La. 2014) (finding no enclave jurisdiction where plaintiff stipulated that it would not seek damages for injuries sustained in federal wildlife reserve).

As the City observes, ECF 111-1 at 49, under Maryland law, when events giving rise to a suit occur in multiple jurisdictions, generally "the place of the tort is considered to be the place of injury." *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 745, 752 A.2d 200, 231 (2000); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986). Here, the claims appear to arise in Baltimore, where the City allegedly suffered and will suffer harm.

I conclude that removal is not warranted on the ground that the City's claims arose on federal enclaves.

### C.    Alternative Bases for Removal

I turn to the defendants' alternative bases for removal.

### 1. Outer Continental Shelf Lands Act

Defendants argue that removal is proper because the Court has jurisdiction over the City's claims under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331–1356b (2012). ECF 124 at 49. Specifically, defendants assert that this case falls within the jurisdictional grant of the OCSLA because they produce a substantial volume of oil and gas on the Outer Continental Shelf ("OCS") and the City's claims arise out of those operations. *Id.* at 50.

The OCSLA provides, in pertinent part: "The subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition …" 43 U.S.C. § 1332(a). The OCSLA contains a jurisdictional grant which states:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with ... any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals …

43 U.S.C. § 1349(b)(1).

The Fifth Circuit has found that the OCSLA jurisdictional grant is "broad" and requires only a "'but-for' connection" between the cause of action and the OCS operation. *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (quoting *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999)); *see also Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013). The Fifth Circuit has also said: "A plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker*, 713 F.3d at 213 (upholding removal where OCSLA jurisdiction existed even though the plaintiff did not specifically invoke it). Defendants do not cite to cases from any other circuit courts applying the OCSLA jurisdictional grant, and this Court is only aware of one. *See Shell Oil Co. v. F.E.R.C.*, 47 F.3d 1186, 1192 (D.C. Cir. 1995) (summarily finding that OCSLA jurisdiction existed over action brought by operator of oil pipeline on OCS

challenging FERC order ruling that pipeline was required to provide oil company with access and transportation services).

Even under a "broad" reading of the OCSLA jurisdictional grant endorsed by the Fifth Circuit, defendants fail to demonstrate that OCSLA jurisdiction exists. *In re Deepwater Horizon*, 745 F.3d at 163 (citations omitted). Defendants were not sued merely for producing fossil fuel products, let alone for merely producing them on the OCS. Rather, the City's claims are based on a broad array of conduct, including defendants' failure to warn consumers and the public of the known dangers associated with fossil fuel products, all of which occurred globally. *See* ECF 42, ¶¶ 5–7, 18, 20, 191. And, defendants offer no basis to enable this Court to conclude that the City's claims for injuries stemming from climate change would not have occurred but for defendants' extraction activities on the OCS. *See County of San Mateo*, 294 F. Supp. 3d at 938–39 (finding that removal under the OCSLA was not warranted where, even though some of the activities that caused the plaintiffs' climate change related injuries stemmed from operations on the OCS, defendants failed to show that the plaintiffs' causes of action would not have accrued but for their activities on the OCS); *see also Matte v. Mobile Expl. & Prod. North Am. Inc.*, Civ. No. BWA-18-7446, 2018 WL 5023729, at *4–5 (E.D. La. Oct. 17, 2018) (no OCSLA jurisdiction where defendants failed to show that plaintiff's injury, leukemia as a result of benzene exposure, would not have occurred but for his three-month employment on the OCS, where plaintiff alleged that he was exposed to benzene for seven years); *Hammond v. Phillips 66 Co.*, Civ. No. KS-14-0119, 2015 WL 630918, at *4 (S.D. Miss. Feb. 12, 2015). *Cf. In re Deepwater Horizon*, 745 F.3d at 163–64 (finding the but for test satisfied where Louisiana sued defendants for pollution damage to its waters and coastline caused by a massive oil spill and it was "undeniable that the oil and other contaminants would not have entered into the State of Louisiana's territorial waters but for

[defendants'] drilling and exploration operation" on the OCS) (internal quotation marks and citation omitted).

Accordingly, I am satisfied that the OCSLA does not support removal.

### 2.     Federal Officer Removal

Defendants assert that this action is removable under the federal officer removal statute, 28 U.S.C. § 1442, because the City "bases liability on activities undertaken at the direction of the federal government."  ECF 124 at 56.

In relevant part, the federal officer removal statute authorizes the removal of cases commenced in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office…"  28 U.S.C. § 1442(a)(1) (2012).  The Supreme Court has explained:

> The [federal officer] removal statute's "basic" purpose is to protect the Federal Government from the interference with its "operations" that would ensue were a State able, for example, to "arrest" and bring "to trial in a State court for an alleged offense against the law of the State," "officers and agents" of the Federal Government "acting … within the scope of their authority."

*Watson v. Philip Morris Co*., 551 U.S. 142, 150 (2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)); *see also Maryland v. Soper*, 270 U.S. 9, 32 (1926) ("The constitutional validity of the section rests on the right and power of the United States to secure the efficient execution of its laws and to prevent interference therewith, due to possible local prejudice…").

A defendant who seeks to remove a case under § 1442(a)(1) must satisfy three elements. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (citations omitted).  First, it must show that it was an officer of the United States or "acting under" a federal officer within the meaning of the statute.  *Id*. (citing *Watson*, 551 U.S. at 147).  Second, it must raise "a colorable

federal defense." *Id.* (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).  Finally, it must establish that the charged conduct was carried out "for or relating to" the asserted official authority. *Id.* (citing 28 U.S.C. § 1442(a)(1)); *see Mesa v. California*, 489 U.S. 121, 139 (1989); *Texas v. Kleinert*, 855 F.3d 305, 311–12 (5th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 642 (2018).

This is, of course, a civil case.  But, by analogy, in a criminal case, to establish that an act arises "under color of such office", the removing defendant "must 'show[ ] a "causal connection" between the charged conduct and asserted official authority.'" *Kleinert*, 855 F.3d at 312 (quoting *Willingham*, 395 U.S. at 409).  "'It must appear that the prosecution . . . arise[s] out of the acts done by [the officer] under color of federal authority and in enforcement of federal law . . . .'" *Id.* (alterations in original) (quoting *Mesa*, 489 U.S. at 132–33).

Moreover, invocation of the federal officer removal statute must be "predicated on the allegation of a colorable federal defense by the defendant officer.  *Mesa*, 489 U.S. at 129; *see also North Carolina v. Cisneros*, 947 F.2d 1135, 1139 (4th Cir. 1991); *North Carolina v. Ivory*, 906 F.2d 999, 1001 (4th Cir. 1990).  A court must construe the defendant's alleged facts as "if those facts were true." *Ivory*, 906 F.2d at 1002.  But, the factual allegations must "support" a defense." *Cisneros*, 947 F.2d at 1139 (quoting *Ivory*, 906 F.2d at 1001) (emphasis omitted).  That is, they must enable a court to conclude that the "colorable" defense is plausible.  *See United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001); *Kleinert*, 855 F.3d at 313; *cf. Jefferson Cty.*, 527 U.S. at 432 ("[R]equiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statue").

Defendants rely on three relationships with the federal government to support their argument that the federal officer removal statute authorizes removal of this action.  First, they point out that the predecessor of defendant Chevron, Standard Oil, extracted oil for the United States

Navy. ECF 1, ¶ 63; ECF 2-4 (Unit Plan Contract of 06/19/1944 between Navy Department and Standard Oil). In addition, defendant CITGO had fuel supply agreements with the Navy between 1988 and 2012. ECF 1, ¶ 64. Finally, defendants assert that their operations on the OCS were regulated by a leasing program developed by the Secretary of the Interior to promote the development of OCS resources. *Id.* ¶ 61; ECF 2-3 (boilerplate lease issued by the Department of the Interior pursuant to the OCSLA). By contracting with the government to perform these vital services, defendants argue, they were "acting under" federal officials. ECF 124 at 62.

Even assuming that the first two requirements for removal under § 1442 are satisfied, defendants have failed plausibly to assert that the third requirement for removal under this statute is met – *i.e.*, that the charged conduct was carried out "for or relating to" the alleged official authority. 28 U.S.C. §1442(a)(1); *Sawyer*, 860 F.3d at 257–58. Defendants have been sued for their contribution to climate change by producing, promoting, selling, and concealing the dangers of fossil fuel products. *See* ECF 42, ¶¶ 1, 221, 241, 253, 263. They have not shown that a federal officer controlled their total production and sales of fossil fuels, nor is there any indication that the federal government directed them to conceal the hazards of fossil fuels or prohibited them from providing warnings to consumers.

Defendants claim only that the federal government purchased oil and gas from one of the twenty-six defendants, and the predecessor of another defendant, and broadly regulated defendants' extraction on the OCS. Case law makes clear that this attenuated connection between the wide array of conduct for which defendants have been sued and the asserted official authority is not enough to support removal under § 1442(a)(1). *See County of San Mateo*, 294 F. Supp. 3d at 939 (finding that defendants failed to show a "causal nexus" between the work performed under federal direction and the plaintiffs' claims for injuries stemming from climate change because the

plaintiffs' claims were "based on a wider range of conduct"); *In re Wireless Tel.*, 327 F. Supp. 2d 554, 562–63 (D. Md. 2004) (holding that phone manufacturers could not remove pursuant to § 1442(a)(1) where plaintiffs' claims were largely based on their failure to provide warnings to consumers and the manufacturers did not show that the government prohibited them from providing additional safeguards or information to consumers); *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 950 (E.D.N.Y. 1992) (finding that defendants could not remove case pursuant to § 1442(a)(1) where they were "being sued for formulating and producing a product all of whose components were developed without direct government control and all of whose methods of manufacture were determined by the defendants"). *Cf. Sawyer*, 860 F.3d at 258 (finding a sufficient connection between the charged conduct and the asserted official authority where the plaintiffs alleged that defendant failed to warn them of asbestos in the boilers it manufactured for the Navy and the Navy dictated the content of the warnings on defendant's boilers).

Therefore, even assuming, *arguendo*, that the defendants were "acting under" federal officials on these occasions and can assert a colorable defense, removal based on the federal officer removal statute is not proper because defendants have failed to plausibly assert that the acts for which they have been sued were carried out "for or relating to" the alleged federal authority. 28 U.S.C. §1442(a)(1); *Sawyer*, 860 F.3d at 254.

### 3.     Bankruptcy Removal Statute

Defendants maintain that the bankruptcy removal statute, 28 U.S.C. § 1452, permits removal. ECF 124 at 64. That statute provides, in relevant part:

> A party may remove any claim or cause of action in a civil action other than ... a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Section 1334, in turn, grants district courts original but not exclusive jurisdiction "of all civil proceedings … arising in or related to cases under title 11." *Id.* § 1334(b).

According to defendants, this action falls within the Court's original jurisdiction under § 1334 because it is "related to countless bankruptcy cases." ECF 124 at 64. Specifically, they claim that this action is related to bankruptcy proceedings involving the predecessor of defendant Chevron, Texaco, whose Chapter 11 plan was confirmed in 1987. *Id.* at 65. Defendants also assert that Texaco's Chapter 11 plan bars "certain claims" against it arising before March 15, 1988, and, because the City seeks to hold defendant Chevron liable for Texaco's culpable conduct before that date, the adjudication of the City's claims would affect the interpretation or administration of the plan. *Id.* In addition, defendants argue that this case is related to the bankruptcy proceedings of other companies in the fossil fuel industry, such as Peabody Energy. *Id.* Therefore, defendants posit that this case falls within the Court's "related to" jurisdiction and was properly removed under § 1452. *Id.* at 64–65.

The City contends, however, that this action does not fall within the Court's original jurisdiction under § 1334 because it is not related to any bankruptcy proceedings. ECF 111-1 at 59–60. In addition, the City argues that this action is exempt from removal under § 1452 because it represents an exercise of its police and regulatory powers. *Id.* at 56–58.

The Court first considers whether this action is "related to" a bankruptcy proceeding and, thus, subject to removal under the bankruptcy removal statute. 28 U.S.C. § 1334(b); 28 U.S.C. § 1452(a) ("A party may remove … if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."). The "close nexus" test determines the scope of a court's "related to" jurisdiction in the post-confirmation context. *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007). That is, for "related to" jurisdiction to exist after a Chapter

11 plan is confirmed, "the claim must affect an integral aspect of the bankruptcy process – there must be a close nexus to the bankruptcy plan or proceeding." *Id*. at 836 (quoting *In re Resorts Int'l, Inc*., 372 F.3d 154, 166–67 (3d Cir. 2004)); *see also In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013).

Under this inquiry, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Valley Historic*, 486 F.3d at 836–37 (quoting *In re Resorts Int'l*, 372 F.3d at 167). As the Fourth Circuit explained, the "close nexus" requirement "insures that the proceeding serves a bankruptcy administration purpose on the date the bankruptcy court exercises that jurisdiction." *Id*. at 837. *See also In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (adopting the "close nexus" test for post-confirmation "related to" jurisdiction because it "recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility").

Defendants fail to demonstrate that there is a "close nexus" between this action and any bankruptcy proceedings. The only bankruptcy plan that defendants identify was confirmed more than thirty years ago and, although defendants assert that the plan bars "certain claims against [Texaco] arising before March 15, 1988," they do not explain how the City's recently filed claims implicate this provision. ECF 124 at 65. At most, defendants have only established that some day a question *might* arise as to whether a previous bankruptcy discharge precludes the enforcement of a portion of the judgment in this case against defendant Chevron. This remote connection does not bring this case within the Court's "related to" jurisdiction. 28 U.S.C. 1334(b); *see In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010) (holding that the bankruptcy court did not have "related to" jurisdiction over breach of contract action that "could have existed entirely apart from the

bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law").

Moreover, even assuming, *arguendo*, that this action is within the Court's bankruptcy jurisdiction, it is exempt from removal under § 1452 as an exercise of the City's police or regulatory powers.

To my knowledge, the Fourth Circuit has not considered the parameters of the police or regulatory exception to removal under § 1452. It has, however, construed the phrase "police or regulatory power" in the automatic stay provision of the bankruptcy code. *See Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001). That section, in relevant part, exempts from the automatic stay "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … power and regulatory power, including the enforcement of a judgment other than a money judgment…" 11 U.S.C. § 362(b)(4). Because "[t]he language of the police and regulatory power exceptions in the automatic stay context and in the removal context is virtually identical, and the purpose behind each exception is the same," it is proper to look to judicial interpretation of § 362 for guidance in applying the exception in the removal context. *City & Cty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1123 (9th Cir. 2006), *cert denied*, 549 U.S. 882 (2006); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 132 (2d Cir. 2007) (looking to judicial interpretations of § 362(b)(4) for guidance in defining the parameters of a governmental unit's police or regulatory power in the context of § 1452).

The Fourth Circuit looks to the "purpose of the law that the state seeks to enforce" to determine whether an action is an exercise of a governmental entity's police and regulatory power. *Safety-Kleen*, 274 F.3d at 865. In *Safety-Kleen*, it explained the inquiry as follows:

If the purpose of the law is to promote "public safety and welfare," or to "effectuate public policy," then the exception applies. On the other hand, if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," or to "adjudicate private rights," then the exception is inapplicable.

*Id*. (citations omitted). This inquiry is an objective one. *Id*. The court examines "the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case." *Id*.

The City asserts claims against defendants for injuries stemming from climate change. It brings this action on behalf of the public to remedy and prevent environmental damage, punish wrongdoers, and deter illegal activity. As other courts have recognized, such an action falls squarely within the police or regulatory exception to § 1452. *See County of San Mateo*, 294 F. Supp. 3d at 939 (holding that suits against oil companies for injuries stemming from climate change were exempt from bankruptcy removal statute because they were "aimed at protecting the public safety and welfare and brought on behalf of the public"); *MTBE*, 488 F.3d at 133 (finding that the police power exception prevented the removal of states' claims against corporations that manufactured and distributed gasoline containing MTBE because "the clear goal of these proceedings is to remedy and prevent environmental damage with potentially serious consequences for public health, a significant area of state policy"). *See also Safety-Kleen*, 274 F.3d at 866 (holding that a state environmental agency's attempt to enforce financial assurance requirements was within the regulatory exception because "the regulations serve to promote environmental safety in the design and operation of hazardous waste facilities").

That the relief sought by the City includes a monetary judgment does not alter this conclusion. In *Safety-Kleen*, the Fourth Circuit reasoned: "The fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable. Rather, we must determine the *primary* purpose of the law that the state is attempting to enforce."

274 F.3d at 865. *See also MTBE*, 488 F.3d at 133–34 (rejecting defendants' argument that the police power exception to § 1452 did not apply to suit brought by governmental units for environmental damage merely because they sought money damages).

Accordingly, I reject defendants' argument that removal of this case is proper under § 1452.

### 4. Admiralty Jurisdiction

Defendants assert that admiralty jurisdiction supports removal of this action. The contention is premised on the fact that, according to defendants, the Complaint alleges injury based on their offshore oil and gas drilling from vessels. ECF 124 at 67.

The Constitution extends the federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. Congress codified this power in a statute, 28 U.S.C. § 1333, which grants federal district courts "original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." *Id*. § 1333(1); *see Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 531 (1995). The latter portion of this jurisdictional grant, often referred to as the "saving to suitors" clause, is a "grant to state courts of *in personam* jurisdiction, concurrent with admiralty courts." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001) (citations omitted).

The City argues that admiralty claims brought in state court are not removable under 28 U.S.C. § 1441 absent some other jurisdictional basis, such as diversity or federal question jurisdiction. ECF 111-1 at 62. Further, it maintains that, even if admiralty jurisdiction *does* supply an independent basis for removal, this action does not fall within the Court's admiralty jurisdiction

because it satisfies neither the "location" test nor the "connection to maritime activity" test articulated by the Supreme Court. *Id*. at 63–64 (citing *Grubart*, 513 U.S. at 534).

The scope of removal jurisdiction over admiralty claims has generated significant confusion over the years. *See* 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3674 (4th ed. 2013) ("Whether an admiralty or maritime matter instituted in a state court falls within the removal jurisdiction of the federal courts is a question that has been beset by confusion and uncertainty over the years, some of which continues to this day.").

To my knowledge, most of the courts that have considered the issue have concluded that admiralty claims are not removable absent an independent basis for federal jurisdiction, such as diversity. *See Cassidy v. Murray*, 34 F. Supp. 3d 579, 583 (D. Md. 2014); *Forde v. Hornblower N.Y., LLC*, 243 F. Supp. 3d 461, 467–68 (S.D.N.Y. 2017) (noting that "the overwhelming majority of district courts" have held that admiralty claims are not removable absent another basis for jurisdiction); *Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 809–10 (M.D. La. 2015) (citing over forty cases for the proposition that a "growing chorus of district courts that have concluded that the [the 2011 amendment to § 1441] did not upset the long-established rule that general maritime law claims, saved to suitors, are not removable to federal court, absent some basis for original federal jurisdiction other than admiralty"). *See also* 14A Wright & Miller, *supra*, § 3674 (4th ed. Supp. 2019) (noting that a majority of courts have found that admiralty jurisdiction does not independently support removal). But, as defendants point out, some courts have held otherwise. *See Ryan v. Hercules Offshore, Inc*., 945 F. Supp. 2d 772, 777–78 (S.D. Tex. 2013) (holding that admiralty claims are freely removable); *see also Exxon Mobil Corp. v. Starr Indem. & Liab. Co*., Civ. No. NFA-14-1147, 2014 WL 2739309, at *2 (S.D. Tex. June 17, 2014),

*remanded on other grounds on reconsideration*, 2014 WL 4167807 (S.D. Tex. Aug. 20, 2014); *Carrigan v. M/V AMC Ambassador*, Civ. No. EW-13-3208, 2014 WL 358353, at *2 (S.D. Tex. Jan. 31, 2014).

In my view, this Court need not weigh in on this admittedly complicated issue. I find safe harbor in the view that, even if admiralty jurisdiction *does* provide an independent basis for removal, this case is outside the Court's admiralty jurisdiction.

As to a tort claim, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. §1333(1) must satisfy two tests: the "location test" and the "maritime connection" test. *Grubart*, 513 U.S. at 534, 538. To satisfy the location test, a plaintiff must show that the tort at issue "occurred on navigable water," or if the injury was suffered on land, that it was "caused by a vessel on navigable water" within the meaning of the Admiralty Extension Act. *Id*. at 534 (citing former 46 U.S.C. § 30101(a) (2012)). To satisfy the maritime connection test, a plaintiff must show that the case has "a potentially disruptive impact on maritime commerce" and that the "general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id*. (internal quotation marks and citations omitted).

The Court's analysis begins and ends with the location test. Defendants do not dispute that the City's injuries occurred on land; they argue only that the location test is satisfied because the City's injuries were caused by vessels on navigable waters within the meaning of the Admiralty Extension Act, 46 U.S.C. § 30101(a). ECF 124 at 69.

The Admiralty Extension Act provides, in relevant part, 46 U.S.C. § 30101(a):

The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

The statute broadened the reach of admiralty jurisdiction to include claims for injuries suffered on land that are caused by vessels. *See id.* Congress passed the Admiralty Extension Act "specifically to overrule or circumvent" a line of Supreme Court cases that had "refused to permit recovery in admiralty even where a ship or its gear, through collision or otherwise, caused damage to persons ashore or to bridges, docks, or other shore-based property." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 209 (1971); *see also Louisville & N.R. Co. v. M/V Bayou Lacombe*, 597 F.2d 469, 472 (5th Cir. 1979) ("As a result of the Act, a plaintiff is no longer precluded from suing in admiralty when a vessel collides with a land structure, such as a bridge.").

Not all torts involving vessels on navigable waters fall within the Admiralty Extension Act, however. Rather, the Act requires that an injury on land be proximately caused by a vessel or its appurtenances. *Grubart*, 513 U.S. at 536 (holding that the terms "caused by" in the Admiralty Extension Act require proximate causation); *see also Pryor v. Am. President Lines*, 520 F.2d 974, 979 (4th Cir. 1975) (holding that "a ship or its appurtenances must proximately cause an injury on shore" to fall within admiralty jurisdiction), *cert. denied*, 423 U.S. 1055 (1976); *Adamson v. Port of Bellingham*, 907 F.3d 1122, 1131–32 (9th Cir. 2018) (holding that the Admiralty Extension Act applies only when an injury on land is proximately caused by a vessel or its appurtenances, not those performing acts for the vessel); *Scott v. Trump Ind., Inc.*, 337 F.3d 939, 943 (7th Cir. 2003); *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999) (stating that "the [Admiralty Extension] Act means the vessel and her appurtenances, and does not include those performing actions for the vessel") (citations omitted).

Even if mobile drilling platforms qualify as "vessels" in admiralty, defendants have failed to demonstrate that the City's injuries were "caused by a vessel on navigable waters," within the meaning of the Admiralty Extension Act. 46 U.S.C. § 30101(a). The City nowhere alleges that

defendants' mobile drilling platforms or their appurtenances caused its injuries. Indeed, the Complaint does not mention any mobile drilling platforms or other vessels. Rather, the City alleges that defendants' worldwide production, wrongful promotion, and sale of fossil fuel products caused its environmental disruptions and their associated impacts.

That some unspecified portion of defendants' production occurred on these vessels, as defendants assert, does not mean that the vessels *themselves* caused the City's injuries, much less proximately caused them. *See Pryor*, 520 F.2d at 982 (finding vessel did not cause plaintiff's injuries on land "[b]ecause it is not conceptually possible to charge the ship with having caused the defective packaging …"). Thus, it cannot be said that the City's injuries were "caused by a vessel on navigable waters," within the meaning of the Admiralty Extension Act. 46 U.S.C. § 30101(a).

## II. Conclusion

For the reasons stated above, I conclude that the case was not properly removed to federal court. Therefore, the case must be remanded to the Circuit Court for Baltimore City, pursuant to 28 U.S.C. § 1447(c).

As stipulated by the parties, the Court will stay execution of an order to remand for thirty days.

An Order follows.


Date:   June 10, 2019.                                    _____/s/_____
                                                          Ellen Lipton Hollander
                                                          United States District Judge